Alma **GONZALES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–84–00568–CR.

Court of Appeals of Texas,
San Antonio.

March 12, 1986.

Jimmy Parks, Adams & Hunter, San Antonio, for appellant.

W.C. Kirkendall, Dist. Atty., Seguin, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a conviction for possession of lysergic acid diethylamide (LSD) for which appellant received a sentence of from two to ten years' confinement in the Texas Department of Corrections. We affirm the conviction.

Appellant's house was searched, pursuant to a warrant. The object of the search was heroin. The officers found bottle caps with traces of heroin on the burned out insides, syringes, marijuana cigarettes, and a page of some 86 stamps, with a substance on the back of the stamps which was later established to be LSD.

■ Appellant first contends that the trial court erred in failing to submit a requested instruction emphasizing that mere proximity to the controlled substance is insufficient to convict of possession. The charge of the court contained the following paragraphs:

> By the term 'possession' is meant the actual care, custody, control, or management of the narcotic substance ...

> With respect to the 'possession' charged, you are instructed that such possession is a voluntary act if the possessor *knowingly* obtains or received the thing possessed or is aware of her control of the thing for a sufficient time to permit her to determine her control.

> Before you could be warranted in convicting the defendant ... you must also find beyond a reasonable doubt

that the defendant *voluntarily* had the lysergic acid diethylamide, if any, in her possession.

> Now if you find from the evidence beyond a reasonable doubt that ... the defendant, ALMA GONZALES, did intentionally and *knowingly* possess a controlled substance ... then you will find the defendant guilty as charged. (Emphasis added.)

The appellant requested, but was refused, the following instruction:

> You are further instructed that mere precense [sic] by an individual during the commission of an offense is by and of itself insufficient to convict that individual of the offense being committed.

The cases cited in support of this ground of error are distinguishable in two aspects. First the premises in each case were more open and accessible than in the present case. In *Ramos v. State*, 478 S.W.2d 102 (Tex.Crim.App.1972), the contraband was found in a utility room outside the defendant's house. In *Troyer v. State*, 516 S.W.2d 163 (Tex.Crim.App.1974), the contraband was found inside an apartment that was also used as an office, to which six employees had keys. In the present case, the appellant is the owner and only adult regularly living at the house. Her claim that her brother and his girlfriend, Yolanda Garza, resided there could have been disbelieved by the jury. *Contrast Rhyne v. State*, 620 S.W.2d 599, 601–02 (Tex.Crim.App.1980) (Two of the defendant's roommates testified that they lived there with him, that he lived there only about two nights a week, and that one of the roommates was addicted to the narcotic found on the premises.)

Second, the charges in the *Ramos* and *Troyer* cases were somewhat similar to the charge in the present case, and there the charges were ruled inadequate. However,

the one distinction is that in the present charge, the word *voluntarily* is included, whereas the charges in *Ramos* and *Troyer* contained the word *unlawfully*, and not *voluntarily*.[1]

Both *Ramos* and *Troyer* were decided on the fact that the court failed to charge on the knowledge issue.

The refusal of the requested charge was not error because the charge, as submitted, adequately addresses the question of knowing possession raised by the appellant in the requested charge. *See Dabbs v. State*, 507 S.W.2d 567 (Tex.Crim.App.1974).

Appellant's first ground of error is overruled.

■ Appellant's second ground of error is that the evidence is insufficient to sustain a conviction for possession.

In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App.1980). It is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Id.* at 601. When the accused is not in exclusive possession of the place where the substance is found, however, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Id.*

The issue is whether the State established such independent facts and circumstances to affirmatively link appellant to the LSD. Viewed in the light most favorable to the court's finding of guilt, the

---

**1.** The *Ramos* charge included this paragraph: after defining the word possession:

> Now, if you find from the evidence beyond a reasonable doubt that the defendant ... did *unlawfully* possess or have under his control a narcotic ... then you will find the defendant guilty as charged.

The *Troyer* charge was essentially the same:

> Now ... if you believe from the evidence beyond a reasonable doubt that the defendant ... did *unlawfully* possess marihuana then you will find him guilty.

evidence shows the following: (1) Appellant was in the house at the time of the search, although she was not found to be in personal possession of the LSD; (2) appellant owned the house, resided there, and slept in the only bed in the house, located in the living room/bedroom combination where the LSD was found; (3) at the time of the search, one of her children and her brother's girlfriend were present in the house with the appellant, but neither the brother nor his girlfriend was subpoenaed to corroborate the appellant's testimony that the girlfriend was more than a mere guest;[2] (4) a sheet of stamps containing a substance later established to be LSD was found inside a Bible on top of a dresser near some of appellant's jewelry, cosmetics, and a phone bill addressed to appellant; (5) the LSD was in "stamp" form, and was readily divisible for purposes of sale; (6) appellant had $700 in her purse; (7) marijuana and narcotics paraphernalia were found elsewhere in the house, some in plain view.[3]

The mere presence of a person at the scene of an offense, or even knowledge of an offense does not make that person a party to joint possession. *Id.* Furthermore, the fact that a person occupies the premises on which narcotics are found, if also occupied by others, is not usually sufficient in and of itself to justify a finding of joint possession. *Id.*

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Bryant v. State,* 574 S.W.2d 109, 111 (Tex.Crim.App.1978); *Estrada v. State,* 643 S.W.2d 753, 756 (Tex.App.—San Antonio 1982, no pet.). Thus, proof which amounts to only a strong suspicion or mere probability is insufficient. *Rhyne,* at 601.

In the case at hand, the evidence was circumstantial to prove that appellant possessed LSD. There was no direct evidence that she exercised any control over the LSD which was recovered inside her bedroom/living room. There were no furtive gestures by appellant, and she was not shown to have been under the influence of any narcotics. Appellant did not attempt to escape at the time the warrant was executed. The LSD was not in plain view, but rather was hidden in a Bible on a dresser. Some of the other items found in the house, however, provide a basis for a jury to infer appellant's knowledge of the presence of narcotics and paraphernalia in her home. There is a basis for the jury's finding of the second element, appellant's knowledge of the fact that the stamps were a controlled substance. The jury could have inferred her knowledge, even absent direct evidence, from the possession of other controlled substances or narcotic paraphernalia found elsewhere in the house in plain view. *See Daniels v. State,* 574 S.W.2d 127 (Tex.Crim.App.1978); *Hudson v. State,* 643 S.W.2d 162, 163 (Tex.App.—Austin 1982, pet. ref'd).

We conclude that the circumstances proved constitute more than a suspicion or probability of appellant's guilt, and that the hypotheses that the appellant was merely present where the action was taking place and that the LSD belonged to a guest are not reasonable. We find the evidence is sufficient to support the appellant's conviction for possession.

Appellant contends that the prosecutor' final argument was "replete with improper and manifestly harmful remarks, all of which are highly prejudicial." Specifically, she refers to the following comments: (1) "These [the pieces of evidence before the

---

**2.** Officer de la Garza testified that he had seen the appellant's brother outside the home putting clothes into appellant's car a few days before the search and he had also seen him driving appellant's car on the day of the search.

**3.** The following items were found elsewhere in the appellant's house on the day of the search: one unused syringe in the top of a dresser drawer in the hallway, one marijuana cigarette in the kitchen cabinet; one marijuana cigarette under the bed; one unused syringe and one marijuana cigarette in Yolanda Garza's purse; and three bottle caps with traces of heroin burned inside each cap, found in the bathroom; one clip with green and white feathers; one cigarette rolling machine; and one measuring scale.

jury] are the things that are tormenting our community. These are the things that each and every one of us have to be concerned about if we are not going to lose a generation of kids ..." (2) "She is here in court nicely dressed, expensive clothes. She is wearing jewelry that appears to be gold." [This comment was followed by an objection, whereupon the prosecutor was cautioned, then told to proceed. No instruction was given to the jury on this matter.] (3) The prosecutor also referred to the fact that the appellant was on welfare, but had enough money to retain a lawyer, and did not have to ask for a court-appointed attorney. [No objection was made.] (4) The prosecutor asserted that the grand jury heard the same evidence that the petit jury heard and returned an indictment. [This was also followed promptly by an objection which was sustained and by an instruction to disregard.]

■ A statement by the prosecutor as to what the people are expecting was held to bring before the jury facts not admitted at trial and to be prejudicial and harmful to the appellant. *Cox v. State*, 157 Tex.Cr.R. 134, 247 S.W.2d 262, 263 (1952). The appellant's brief accuses the prosecution of beginning his argument by "asserting that the community cried out for a conviction." The record does not indicate, however, that the prosecutor made such a remark. What he actually said was that the jury and everyone should be concerned about the items that were in evidence. The prosecutor said nothing about what the people of the community wanted. He merely urged the jury to be concerned about narcotics and their effect on the children of the community. This is a plea for law enforcement and an acceptable jury argument.

The appellant's brief contains the contention that "unsworn testimony that is prejudicial and unsupported should call for a reversal," but appellant fails to point to a specific statement by the prosecutor that can be considered "unsworn testimony."

Next, appellant complains of the fact that the prosecutor pointed out to the jury that the appellant had the benefit of re-tained, rather than appointed counsel. Although appellant did not object to this comment, she cites this Court to *Borgen v. State*, 657 S.W.2d 15 (Tex.Civ.App.—Houston [1st Dist.] 1983), where the court of appeals overturned a conviction because the prosecutor said "as long as lawyers are for hire, justice is for sale." Not only is there no comparable statement by the prosecutor in the case at hand, *Borgen* was reversed by the Court of Criminal Appeals in 1984. 672 S.W.2d 456 (en banc). The Court of Criminal Appeals found that the comment was unobjected to, and was not so prejudicial under the circumstances as to call for reversal. The conviction was upheld.

■ The prosecutor in this case did err in stating to the jury that the grand jury had heard the same evidence before the petit jury, and the grand jury had returned an indictment. The trial court sustained an objection to this statement and promptly instructed the jury that the grand jury's action was not to be considered. The trial court further explained to the petit jurors that the grand jury had been working under another set of rules. The error was cured by such instruction. *Harris v. State*, 475 S.W.2d 922 (Tex.Crim.App.1972).

■ The argument as a whole is not error. This Court should reverse only for the cumulative error in an argument if the record reflects a course of conduct whereby the prosecutor continually brings impermissible matters before the jury to the extent that such conduct could only have been calculated to inflame and prejudice the minds of the jury. From the record as a whole that is not the case here.

"Jury argument must be either extreme or manifestly improper or inject new and harmful fact to be reversible." *Thomas v. State*, 519 S.W.2d 430, 431 (Tex.Crim.App. 1975).

We are of the opinion that the prosecutor's comments in his final argument, whether taken individually or collectively, do not rise to reversible error.

In her fourth ground of error, appellant complains of the denial of her plea in bar, which was based on the fact that she had pled guilty to possession of marijuana and that conviction was based on her arrest on the same date, same time, same location and same search as her arrest in the present case. Both offenses could thus be said to have arisen out of the same transaction. Both offenses are violations of TEX.REV.CIV.STAT.ANN. art. 4476–15 (Vernon Supp.1986).

The cases cited by appellant under this point of error all precede *Dunn v. State*, 647 S.W.2d 3 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd), *cert. denied*, 461 U.S. 926, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983). In that case, the court of appeals correctly observed that with the demise of the carving doctrine in *Ex parte McWilliams*, 634 S.W.2d 815, 822 (Tex.Crim.App. 1980), prosecution for separate drug offenses arising out of the same transaction is not barred. Double jeopardy only prohibits two prosecutions for the same offense. Even though both offenses are violations of the same statute, they are nevertheless separate offenses, with different grades of punishment.

Ground of error four is overruled.

Appellant filed a motion to suppress the LSD and objected to its introduction at trial on the basis that the affidavit forming the basis of the search warrant was invalid, because it fails to inform the magistrate of the informant's credibility or reliability as to the information. The appellant further complains that the affidavit fails to describe the heroin sought, its container, or to tell who possessed the heroin.

The case of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) prescribes the "totality of the circumstances" analysis for use in determining whether the affidavit supplied probable cause on which to base the search warrant.

The affidavit in the instant case asserted that at least one demonstrably reliable informant had observed heroin at the residence of the appellant within a reasonable time of the making of the affidavit. There was corroboration of this informant because the officer was able to testify that the informant had been reliable in the past. There was substantial basis for crediting the hearsay. *See Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960).

Appellant's ground of error pertaining to the motion to suppress is overruled, and the conviction is affirmed.